# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 5545 | **DATE** | 3/8/2011 |
| **CASE TITLE** | MediaTec Publishing, Inc. vs. Lexington Insurance Co. | | |

**DOCKET ENTRY TEXT**

Lexington's Rule 72(a) Objections to Magistrate Judge Keys' October 20th Order are denied.

■[ For further details see text below.]

Docketing to mail notices.
*Copy to judge/magistrate judge.

## STATEMENT

    This is a diversity jurisdiction breach of contract case concerning insurance coverage. The plaintiff, MediaTec Publishing, is a magazine publisher that hosts business seminars at leading hotels in places like Miami Beach. (Cmplt. ¶ 2.) In hosting these events, MediaTec must commit ahead of time to a block of rooms and agree to pay other expenses. (¶ 11.) It then makes profit projections based on historical data. (¶ 12.) However, to protect against financial risks, it obtains event cancellation insurance to insure against unforeseeable financial losses. (¶ 13.) Specifically here, MediaTec set up two conferences, one to be held in February 2009 and the other in April 2009. (¶¶ 15, 29.) Planning began a year ahead of time. (¶¶ 16, 30.) MediaTec purchased an Event Cancellation Policy for each event from defendant Lexington Insurance Company. In between the signing of the policies and the holding of the conferences, the United States suffered an economic collapse, what plaintiff refers to in its complaint as a credit tsunami. *See generally* ¶¶ 6-10. The economic collapse caused MediaTec's two conferences to bring in much less revenue than expected based on historical numbers. MediaTec believes that the two policies issued by Lexington should cover the losses in expected revenue. Lexington disagrees.

    After Lexington filed its answer, the parties proceeded with discovery under the supervision of the magistrate judge. MediaTec sought to discover, among other things, information about "other insureds," meaning other companies who had bought similar event cancellation policies and who had made claims on those policies during the period from Nov. 1, 2008 and July 30, 2009. which is the "the period when the recession was [] at its peak." (Oct. 20, 2010 Hrg. Tr. at 7.) The rationale for seeking this discovery was that it might shed light on how Lexington interpreted its event cancellation policies and specifically how it had defined the term "proximate cause" in the context of the economic collapse. The issue was briefed before the Magistrate Judge who heard oral argument on Oct. 20, 2010. Each side argued its position at the hearing and, after questioning the attorneys, the Magistrate Judge ruled that Lexington should disclose information about the other insureds. In doing so, he first framed the issue of relevance as whether Lexington had "been inconsistent in the past in dealing with others with the same kind of issues." (Tr. at 5.) He noted that the

information sought covered "limited period" and that there were not likely a high number of claims specifically for event cancellation policies during this period (Tr. at 11.) He concluded:

> You have two policies that are at issue, 1054521 and 8767496, but the plaintiff is entitled to know how that case was handled, how those two cases were handled, what went into your decision, your decision in those two cases as well as other cases that have involved claims regarding event cancellation policies that you had [] with other insurers. There's no question about that. It's not even close as far as I'm concerned. They have a right to know how you interpret policy language in the event cancellation policies[.]

(Tr. at 10.)

Within 14 days of this ruling, Lexington filed objections pursuant to Fed. R. Civ. Pro. 72(a). We set a briefing schedule, and the matter was fully briefed. Under Rule 72(a), in considering a non-dispositive matter, we will set aside the ruling of the Magistrate Judge only if we find that it is "clearly erroneous or contrary to law." Lexington raises two primary arguments: relevance and confidentiality.

As for relevance, MediaTec, both in its response brief here and in the hearing before the Magistrate Judge, articulated a straightforward rationale for why this evidence "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Pro. 26(b)(1). The key disputed phrase in the policies, according to MediaTec, is the phrase "proximate cause." This phrase is not defined therein. Moreover, it is a phrase subject to differing interpretations. For example, the Illinois Pattern Jury Instructions define it in three different ways. (Resp. at 9.) In short, the phrase is potentially ambiguous.

Lexington in its two briefs to this Court argues, in general terms, that the policies contain no ambiguities. Yet, surprisingly, Lexington does not address or even acknowledge the central argument made by its opponent. Lexington never attempts to rebut MediaTec's claim that the phrase "proximate cause" is ambiguous, and never offers any analysis of what it believes the phrase means. MediaTec made this same argument to the Magistrate Judge. (Tr. at 8). Lexington likewise there did not attempt to rebut it. Given MediaTec's specific and credible argument that there will be a dispute down the road over the meaning of this phrase, Lexington's blanket claim that there is no ambiguity is unconvincing. Lexington claims there is no ambiguity because both sides have previously taken the position that there is no ambiguity. But this does not mean that they agree on the *same interpretation*. Ambiguity typically emerges in the clash of opposing litigating positions. In sum, the Magistrate Judge relied upon a credible rationale for relevancy. He gave each side an opportunity to make its argument, and carefully listened to the arguments. He also was aware of the case law and distinguished one of the cases relied upon by Lexington. (Tr. at 9-10.) He finally noted, correctly, that the time frame was limited and that the information sought concerns similar types of event cancellation policies.

Lexington's other main argument is that the order will require disclosure of confidential information. As to this issue, the Magistrate Judge noted that the discovery would be pursuant to the protective order, stating that "[w]e assume that lawyers abide by protective orders, so a confidentiality objection is not going to save the day." (Tr. at 22-23.) Further, counsel for MediaTec agreed at the hearing that Lexington could redact the names of the insureds. We cannot say that this conclusion is clearly erroneous. Lexington argues that it has contracts with the other insureds in which it agreed not to disclose information. If this were a ground to prevent disclosure, then this Court would be powerless to order discovery no matter how relevant. As noted above, we agree with the Magistrate Judge that MediaTec has articulated a reasonable basis for why this information might lead to the discovery of admissible evidence. For all of the above reasons, we deny the Objections to the October 20th ruling.